IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ASHUTOSH SHARMA, § <br> PLAINTIFF, § <br> § <br> v. § <br> § <br> AMAZON.COM, INC., AND § <br> AMAZONTXCARE EMPLOYEE § <br> INJURY BENEFIT PLAN, § <br> DEFENDANTS. § | CASE NO. 3:21-CV-54-C-BK |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. Now before the Court are Plaintiff's *Motion for Summary Judgement* [sic], Doc. 25, and *Defendants' Cross-Motion for Summary Judgment*, Doc. 28. As detailed here, Plaintiff's motion for summary judgment should be **DENIED** and Defendants' motion for summary judgment should be **GRANTED**.

### I. BACKGROUND

Plaintiff Ashutosh Sharma worked for Defendant Amazon.com, Inc. ("Amazon"), from late 2018 to late 2019, Doc. 25-6 at 9, during which, Plaintiff filed four claims for work-related injuries, Doc. 23-1 at 51. The first two were workers' compensation claims and both were denied. Doc. 23-1 at 51. Then, Amazon became a non-subscriber to workers' compensation, creating its AmazonTXCare Employee Injury Benefit Plan (the "Plan"). Doc. 25-2 at 2; Doc. 29 at 5. Following this change, Plaintiff filed his third claim, which was denied, and his fourth claim, which is at issue here. Doc. 23-1 at 51; Doc. 29 at 6.

In June 2019, Plaintiff filed a fourth claim for severe right shoulder pain. Doc. 1-1 at 8. He was approved to take a leave of absence with short-term disability benefits from July to October 2019. Doc. 23-1 at 22, 26. In July 2019, Defendants—acting through the Plan's third-party claim administrator, Anchor Risk and Claims Management ("Anchor")—denied Plaintiff's claim for benefits on the grounds that his injury was not "directly and solely a result from the Course and Scope of Employment." Doc. 23-1 at 2 (Notice of Denial for Occupational Injury Benefits from Anchor). Plaintiff appealed. Doc. 23-1 at 41-53.

After the denial of his appeal, Plaintiff initiated this lawsuit to recover the benefits that he maintains Defendants wrongly withheld. Doc. 1-1 at 8-10. Liberally construing Plaintiff's *pro se* complaint, he seeks judicial review of Defendants' denial of his fourth claim under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).[1] Doc. 1-1 at 10-11. The Court now considers the parties' cross-motions for summary judgment.

## II. APPLICABLE LAW

In general, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quotation omitted). These rules apply to summary judgment motions in ERISA benefit-denial cases, *id.*, which federal district courts have jurisdiction to review. 29 U.S.C. § 1132(e).

---

[1] Plaintiff references ERISA Section 502(a), which is codified at 29 U.S.C. § 1132(a). Doc. 1-1 at 10. Further, the language of Plaintiff's complaint evinces his intent to plead also under section 1132(a)(1)(B). Doc. 1-1 at 10-11; *see Erickson v. Pardus*, 551 U.S. 89, 94 ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotation omitted).

## III. ANALYSIS

Plaintiff argues summary judgment should be granted in his favor because "Defendants failed to respond [to] any discovery requests and failed to disclose an expert qualified in Orthopedics or Sports medicine who holds the same opinion as Defendants . . . to deny medical expenses for the work[-]related injury caused to Plaintiff." [2] Doc. 25 at 1. In their cross-motion, Defendants argue that "there is no evidence that [they] interpreted the Plan incorrectly or abused their discretion in denying Plaintiff's fourth claim," and request a grant of summary judgment in their favor. Doc. 29 at 9.

**1. Plaintiff has not raised a dispute of material fact that Defendants' denial of his claim was arbitrary or capricious.**

ERISA section 1132(a)(1)(B) enables a plan participant or beneficiary to bring a cause of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). When the plan "lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, the Plan vests Amazon with such discretionary authority. Doc. 30-1 at 4 (the Plan, giving Amazon.com Services, Inc., as Plan Administrator, "specific authority to interpret the Plan provisions, to establish administrative rules and to amend the Plan"). Amazon also "both evaluates claims for

---

[2] With his motion for summary judgment, Plaintiff submitted more than 300 pages of evidence. *See* Doc. 25 attachments 1-13. Concurrent with Defendants' motion for summary judgment, they moved to strike any evidence Plaintiff included that was not part of the Administrative Record. Doc. 31. At bottom, Plaintiff's submission would not change the result here, since the reviewable evidence is limited to that contained in the administrative record. *Jones v. United Parcel Serv., Inc.*, No. CIV.A.3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (Lindsay, J.), *aff'd by* 307 F. App'x 864 (5th Cir. 2009). Thus, contemporaneously with this Recommendation, Defendants' motion to strike, Doc. 31, is **DENIED AS MOOT**.

benefits and pays benefits claims," which creates a conflict of interest but does not change the Court's standard of review—instead, this changes only the amount of deference afforded. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027 (5th Cir. 2015); Doc. 30-1 at 22 (the Plan). "Conflicts are but one factor among many that a reviewing judge must take into account and should prove more important where circumstances suggest a higher likelihood that the conflict affected the benefits decision and less important where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.* (quotation omitted) (cleaned up). In this instance, the Plan utilizes Anchor, a third-party claims administrator, thereby reducing potential bias, promoting accuracy, and mitigating the likelihood that the benefits decisions are affected by the conflict of interest. Doc. 25-6 at 43.

With these considerations in mind, the Court turns to the two-step assessment: "First, it determines whether the administrator gave the Plan a legally correct interpretation. Second, it decides whether the incorrect decision constitutes an abuse of discretion." *Baker v. Aetna Life Ins. Co.*, 260 F. Supp. 3d 694, 700 (N.D. Tex. 2017). If the court can more readily determine the second step—that the decision was not an abuse of discretion—it may skip consideration of the first. *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 483-84 (5th Cir. 2017). "An abuse of discretion occurs when the plan administrator acted arbitrarily or capriciously. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016) (internal quotations omitted). To survive summary judgment, Plaintiff must demonstrate that a genuine dispute of material fact exists regarding whether Defendants' denial of his claim was arbitrary or capricious. *Id.*

The Plan at issue here only covers injuries incurred in the Scope of Employment, which it defines as "activity of any kind or character that involves or has to do with and originates in the work, business, trade, or profession of the Employer and that is performed by the employee while engaged in or about the furtherance of the affairs or business of the Employer." Doc. 30-1 at 5. However, Anchor found Plaintiff's "condition was not directly and solely a result from the Course and Scope of Employment." Doc. 23-1 at 2. The plan-approved physician who examined Plaintiff also opined that Plaintiff had not sustained a work-related injury and advised Plaintiff to follow up with his primary care physician for further treatment. Doc. 23-1 at 4, 7. Plaintiff nevertheless argues that other doctors determined his was a work-related injury. Doc. 25 at 9-10, 17-18. However, the administrative record contains no evidence of contrary medical findings.³ Doc. 23-1 at 2-53.

Even assuming *arguendo* that the administrative record contained evidence in support of Plaintiff's assertion that other doctors came to a contrary conclusion, Plaintiff could not prevail. Where the "decision simply [comes] down to a permissible choice between the position of the administrator's independent medical consultant[], and the position of the claimant's physician[], [it] does not amount to an abuse of discretion in this Circuit." Burell, 820 F.3d at 139 (quotation omitted) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) ("Plan administrators are not obliged to accord special deference to the opinions of treating physicians.")).

---

³ Evidence is inadmissible "to resolve the merits of the coverage determination—*i.e.*, whether coverage should have been afforded under the plan—unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011).

In sum, Plaintiff has pointed to no evidence in the administrative record that demonstrates Defendants' decision to follow the opinion of its own medical consultant was arbitrary or capricious.  The Court need not require Defendants to accord special weight to Plaintiff's physician's opinion, even if it were part of the record, nor need it "impose on [Defendants] a discrete burden of explanation when they credit reliable evidence that conflicts with [Plaintiff's] treating physician's evaluation." *Black & Decker*, 538 U.S. at 834.  Further, the Plan does not require a *specialist's* opinion, but only "an authorized health care provider . . . who is acting within the scope of his or her license or credentials . . . and rendering care or treatment to a participant for his or her Injury that is appropriate for the conditions and locality."  Doc. 30-1 at 5 (the Plan).

**2.  Plaintiff does not seek equitable relief required for his section 1132(a)(3) claim to survive summary judgment.**

Defendants aver Plaintiff cannot support a claim for relief under section 1132(a)(3) because he did not request injunctive relief in his complaint.[4] Doc. 29 at 11.  Like section 1132(a)(1)(B), section 1132(a)(3) authorizes suits on many bases, but limits relief sought to that which arises in equity:

> A civil action may be brought—
> \* \* \*
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

[4] Notably, the Court denied Plaintiff leave to file an amended complaint.  Doc. 39.  Had the Court allowed Plaintiff to amend his complaint, he still failed to seek equitable relief—his proposed amendment only sought to "clarify the equitable nature of the monetary relief" he seeks.  Doc. 27 at 23.  But "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).

29 U.S.C. § 1132(a)(3); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257-58 (1993) (limiting the relief obtainable under ERISA section 502(a)(3) to equitable relief). The Supreme Court has held that section 1132(a)(3) acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that [section 1132] does not elsewhere adequately remedy," because where other relief is provided, equitable relief is unnecessary and would normally be inappropriate. *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996). Thus, "if a plaintiff can pursue benefits under the plan pursuant to [section 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [section 1132(a)(3)]." *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga. Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (internal quotation marks omitted).

Here, Plaintiff only seeks monetary relief. Doc. 1-1 at 5 (Plaintiff's operative complaint seeking $9,109.44); Doc. 1-1 at 26 (Plaintiff's response to Defendant's answer reiterating he seeks only monetary damages—this time in the amount of $9,135.41). "When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [section 1132(a)(1)(B)]." *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 (5th Cir. 2018) (quotation omitted). Because a suit for monetary damages under section 1132(a)(1)(B) is available to Plaintiff, he cannot assert a separate ERISA claim under section 1132(a)(3) seeking the same relief. *Innova Hosp.*, 892 F.3d at 733. To allow claims under both sections would be, in essence, allowing duplicative suits—a claim under section 1132(a)(3) is not available even if a section 1132(a)(1)(B) claim is unsuccessful. *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003)).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's *Motion for Summary Judgement*, Doc. 25, should be **DENIED** and *Defendants' Cross-Motion for Summary Judgment*, Doc. 28, should be **GRANTED**.

**SO RECOMMENDED** on March 8, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).